IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RAYMOND DAVID JACQUES, JR., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CASE NO.: 2:15-cv-261-GMB |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

On January 24, 2012, Plaintiff Raymond David Jacques, Jr. ("Jacques") applied for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, respectively, alleging a disability onset date of January 20, 2012 for both claims. Jacques' claims were denied at the initial administrative level. Jacques then requested and received a hearing before an Administrative Law Judge ("ALJ"). On June 20, 2013, the ALJ held a hearing and denied Jacques' claims. Jacques requested a review of the ALJ's decision and that request was denied on February 24, 2015. As a result, the ALJ's decision became the final decision of the Commissioner of Social Security (the "Commissioner") as of February 24, 2015.

The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Pursuant to 28 U.S.C. § 636(c)(1) and Rule 73.1 of the Local Rules for the United States District Court Middle District of Alabama, the parties have consented to the

undersigned United States Magistrate Judge conducting all proceedings in this case and entering a final judgment. Based on the court's review of the record and the relevant case law, the court finds that the decision of the Commissioner is due to be AFFIRMED.

## I.  STANDARD OF REVIEW

The court reviews a social security case to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).  The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (internal quotations omitted).  Indeed, the court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied." *Kelly v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

"Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Jones ex rel. T.J.J. v. Astrue*, 2011 WL 1706465, at *1 (M.D. Ala. May 5, 2011) (citing *Lewis*, 125 F.3d at 1440).  The court must scrutinize the entire record to determine the reasonableness of the decision reached. *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987).  "If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as a finder of

fact, and even if the court finds that the evidence preponderates against the Commissioner's decision." *Jones*, 2011 WL 1706465 at *2 (citing *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991)). The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Id.* (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medially acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Jacques bears the burden of proving that he is disabled, and he is responsible for producing evidence to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a) (2012).  Specifically, the Commissioner must determine in sequence:

      (1) Is the claimant presently unemployed?
      (2) Is the claimant's impairment severe?
      (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
      (4) Is the claimant unable to perform his or her former occupation?
      (5) Is the claimant unable to perform any other work within the economy?

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III. DISCUSSION

**A.    Facts**

Jacques was 49 years old at the time of the ALJ's decision. R. 29. He has a general education degree and worked from 1980 through 2004, and then from 2007 through 2011.[1] R. 29. His past relevant work experience includes work as a heavy haul dispatcher, a mechanic helper, and a small business owner. R. 33–34.

Following an administrative hearing, the ALJ found that Jacques suffered from the following severe impairments: major depressive disorder, recurrent, mild to moderate; generalized anxiety; degenerative disc disease of the cervical spine with slightly prominent disc bulge at C6–7, with some left cord and nerve root impingement; fatigue;

---

[1] Although the ALJ concluded from his review of the record that Jacques had an "excellent work history" that spanned from 1980 to 2004 and then 2007 to 2011, Jacques represented during the hearing that he had worked, without interruption, from 1980 until 2011. R. 48.

diffuse and age-appropriate osteoarthritis of the hands, knees, and feet exacerbated by cigarette abuse; possible fibromyalgia exacerbated by cigarette abuse; myalgia; arthralgia; bipolar I, manic with possible psychosis; possible hyperactivity deficit disorder; possible pain disorder; and possible posttraumatic stress disorder.[2] R. 22. Despite these severe impairments, after undertaking a review of the entire record, the ALJ found that Jacques did not have an impairment or combination of impairments that meets or medically equals the severity of one of those listed in the applicable regulations. R. 23.  The ALJ further found that Jacques has the residual functional capacity to perform sedentary work but is unable to perform any past relevant work. R. 33.  Ultimately, the ALJ concluded that Jacques was not disabled within the meaning of the Social Security Act from January 20, 2012, his alleged disability onset date, through the date of the ALJ's decision, and the ALJ denied his claims. R. 35.

**B.  Issues Presented**

Jacques presents the following issues for the court's review: (1) whether the ALJ improperly substituted his own opinion for that of a medical expert when evaluating the severity of Jacques' mental health impairments; (2) whether substantial evidence supports the ALJ's finding that Jacques' subjective complaints of pain do not establish disablity; and (3) whether substantial evidence supports the ALJ's credibility determination.  Doc. 11.  Each issue is discussed below.

---

[2] The ALJ also found that Jacques suffered from the following non-severe impairments: emphysema; cocaine abuse in sustained full remission; history of marijuana abuse in sustained full remission; high cholesterol; possible obsessive-compulsive disorder; history of shortness of breath with wheezing with longstanding cigarette abuse; possible tremors; and possible borderline intellectual functioning. R. 23.

### 1.     *Substitution of ALJ's Opinion for Medical Expert's Opinion*

The first issue Jacques presents is whether the ALJ abused his discretion by substituting his own opinion for a medical expert's opinion when evaluating the severity of Jacques' mental health impairments at step three of the sequential evaluation process. After reviewing the evidence and holding a hearing, the ALJ found that the severity of Jacques' mental health impairments, when considered singly and in combination, do not meet or medically equal the criteria of Listings 12.04 (affective disorders)[3] and 12.06 (anxiety-related disorders).[4]  Jacques contends that the ALJ's conclusion is contradicted by the medical evidence.

Jacques has the burden of showing that his mental impairments meet the listing criteria. *See Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).  To meet a listing, Jacques' mental impairment must "meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  Jacques can meet Listings 12.04 and 12.06 by demonstrating that he satisfies the criteria in Paragraphs A and B of those listings. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00, 12.04 & 12.06.  Jacques can also meet the listings by showing that he satisfies the criteria of Paragraph C of Listing 12.04 or Paragraphs A and C of Listing 12.06. *Id.*

---

[3] An affective disorder is "characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

[4] An anxiety-related disorder is characterized by anxiety being "the predominant disturbance" or "experienced if the individual attempts to master symptoms." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06.

On appeal, Jacques takes issue with the ALJ's findings with respect to the Paragraph B criteria.[5]  To satisfy the Paragraph B criteria, which are the same for both relevant listings, Jacques must show at least two of the following:

> (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04 & 12.06; *Bellew v. Colvin*, 2014 WL 3784326, at *5 (S.D. Ga. July 31, 2014), *aff'd sub nom. Bellew v. Acting Comm'r of Soc. Sec.*, 605 F. App'x 917 (11th Cir. 2015).  "Marked" means more than moderate but less than extreme. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C).  "Repeated episodes of decompensation, each of extended duration" means three episodes within one year, or an average of once every four months, each lasting for at least two weeks. *Id.* at § 12.00(C)(4).

After considering the evidence, including Jacques' testimony, the ALJ found that Jacques has mild restrictions in activities of daily living, moderate difficulties with social functioning, moderate difficulties with regard to concentration, persistence, or pace, and

---

[5] The ALJ did not specifically address the Paragraph A criteria in his analysis at step three. R. 23–25.  Paragraph A of Listings 12.04 and 12.06 identifies symptoms commonly associated with affective and anxiety-related disorders and requires the claimant to provide medically documented findings of one or more of the listed symptoms. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(A) & 12.06(A).  Because the ALJ (1) concluded at step two that Jacques' mental health impairments were severe and (2) proceeded to conduct a Paragraphs B and C criteria analysis for both listings, the court presumes, without finding, that the ALJ was satisfied that the Paragraph A criteria had been met for both listings.  As to Paragraph C, the ALJ did analyze those criteria and found that they had not been met for either listing. R. 25.  Thus, the propriety of the ALJ's decision at step three turns on his analysis of the Paragraph B criteria for both listings.

no evidence of decompensation of an extended duration.[6] R. 24. Jacques challenges the ALJ's findings with respect to activities of daily living and social functioning, claiming that the ALJ improperly substituted his own opinion for the medical expert's opinion on those two issues. Doc. 11. The court is not persuaded by Jacques' arguments.

Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(1). The ALJ found that the medical records "reveal an individual significantly involved in monitoring, if not managing, virtually every element of his mental healthcare." Doc. 11 at 5; R. 24. Jacques contends that the medical records from Dr. James Edwards,[7] his treating psychiatrist, demonstrate just the opposite—that Jacques was not adequately managing his mental healthcare because he would sometimes run out of his medications or stop taking them altogether. Doc. 11 at 5. Jacques argues:

> The fact that the Plaintiff was not taking vital medications shows that the Plaintiff is not "managing virtually every element" of his mental health treatment because he was not doing something as simple as consistently taking his medications. This would certainly contradict the ALJ's additional finding that the Plaintiff is able to complete activities "independent of direction or supervision."

Doc. 11 at 5. Yet simply taking medication as prescribed, or not obtaining refills of a

---

[6] The court notes that the ALJ did find that Jacques experienced one to two episodes of decompensation, each of extended duration, but ultimately concluded that these episodes were immaterial to his analysis of the criteria under Paragraph B because they were "directly related" to Jacques' history of substance abuse and had occurred prior to the adjudicated time period. R. 24.

[7] In his brief, Jacques incorrectly identifies Dr. Edwards as "Dr. Edward James." Doc. 11 at 5.

8

medication before or soon after it runs out, does not equate to an individual having a "marked" restriction in activities of daily living. A marked limitation arises if the degree of limitation seriously interferes with the claimant's "ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C). The medical records show that Jacques attended multiple appointments with Dr. Edwards and that he consistently engaged in detailed discussions with Dr. Edwards about his symptoms, progress, and treatment plans. R. 496–526. As with any doctor-patient relationship, Jacques discussed his medications with Dr. Edwards, including their efficacy and supply, and adjustments were made as needed. There is no indication in the medical records, however, that Jacques refused to take his medications, that he routinely neglected to take his medications, or that he relied upon Dr. Edwards to ensure that he took his medications. There is also nothing in the medical records to suggest that Jacques' running out of or not taking a prescribed medication seriously interfered with his ability to function independently, appropriately, effectively, and on a sustained basis. *See* R. 516 (notation by Dr. Edwards that Jacques "ran out of meds but is in control").

Moreover, Jacques' brief ignores other evidence and findings that support the ALJ's conclusion that he has only mild restriction in activities of daily living. For example, the ALJ found that Jacques is "mentally able to initiate, sustain, and complete activities such as attending to his personal care and driving, independent of direction or supervision." R. 24. Indeed, the evidence shows that Jacques lives independently in a trailer, cares for his grooming and hygiene, dresses himself with minor assistance at

times, makes his own plates when he eats a meal, goes outside, spends time with others, and has a Facebook page. R. 24–26. Jacques points out that Sarah Moyer, a licensed psychologist, opined that he would require assistance handling any awarded funds due to insufficient functioning, but her ultimate conclusion—that Jacques is only "mildly impaired in his ability to understand, remember, and carry out instruction and moderately impaired in his ability to respond appropriately to supervision, co-workers, and work pressures in a work setting"—actually supports the ALJ's finding that Jacques has only mild restriction in activities of daily living. Doc. 11 at 6; R. 410.

The substantial evidence shows that Jacques did not have a marked limitation in social functioning either. Social functioning refers to the claimant's ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(2). Although there is some record evidence indicating that Jacques had problems getting along with members of his family, the majority of the evidence demonstrates that Jacques can interact with others. For example, on March 26, 2012, Jacques reported that he went to two ball games and Wal-Mart by himself. R. 518. On May 7, 2012, Jacques reported that he took his son to Talladega, Alabama. R. 514. Jacques also has a Facebook page and spends time with others. R. 24–26. This evidence is substantial and supports the ALJ's conclusion that Jacques can interact with others and has no more than a moderate limitation in social functioning.[8]

---

[8] Jacques contends that Dr. Edwards' two-sentence letter summarily recommending disability due to his "baseline of paranoid thinking" establishes that he has marked difficulty in

It is true that an ALJ cannot substitute his opinion for that of a medical expert. *E.g.*, *Matthews v. Barnhart*, 347 F. Supp. 2d 1093 (M.D. Ala. 2003). However, the ALJ in this case applied the proper legal standards and conducted a thorough analysis at step three of the sequential evaluation process, finding that the criteria under Listings 12.04 and 12.06 had not been met. This finding is supported by substantial evidence, and the ALJ's decision on the issue is due to be affirmed.

### 2.   *Subjective Complaints of Pain and Credibility Determination*

Jacques presents two additional issues for the court's review. First, Jacques' contends that the ALJ did not give proper weight to his subjective complaints of pain. Doc. 11 at 7–8. Second, Jacques contends that the ALJ improperly discredited his testimony. Doc. 11 at 8–11. These issues are intertwined, and thus, will be resolved together.

The Eleventh Circuit has established a three-part "pain standard" that applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). That standard requires a claimant to show:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

---

maintaining social functioning. Doc. 11 at 6; R. 527.  Like the ALJ, the court declines to accept Dr. Edwards' outlier position, as it conflicts with his own treatment records and the remainder of the medical evidence. R. 503–505, 507, 511, 513–516.

11

*Id.* (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)); 20 C.F.R. §§ 404.1529, 416.929. "Credibility determinations are, of course, for the Secretary, not the courts." *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983)). If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. § 404.1529(c)(1). "The ALJ compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause." *O'Kelley v. Comm'r of Soc. Sec.*, 2016 WL 4751710 at *9 (M.D. Fla. Sept. 13, 2016). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984).

After reviewing the evidence, including Jacques' testimony, the ALJ concluded that Jacques' medically determinable impairments could reasonably be expected to cause the alleged symptoms. R. 29. However, the ALJ went on to conclude that Jacques' testimony concerning the intensity, persistence, and limiting effects of his symptoms was not entirely credible. R. 29. The ALJ explained that "the medical evidence fails to corroborate [Jacques'] allegations of totally disabling symptoms and limitations due to any of his medical complaints," and he specifically characterized Jacques' testimony as an "exaggeration," "excessive symptomology" with "not enough pathology," and an

12

overstatement of "the severity and frequency of his symptoms and limitations" that are "so extreme as to appear implausible." R. 29–32.

    Jacques testified to extreme neck and back pain, but MRI findings show that he has only a small focal disc protrusion at L2-3 and a slight focal disc protrusion at C6-7. He has no bony osteophytes, no disc protrusions from L1-2 through L5-S1 and C2-3 through C7-T1, no central spinal stenosis, and no foraminal narrowing. R. 4-5, 445–46, 642–65.  Dr. Gregory McCormack found that the "combined effect of the claimant's degenerative disc disease . . . is that of a severe impairment," but the "severity is based mainly on the claimant's symptoms of pain, as his symptoms are disproportionate to the relatively mild findings in MRI studies and on physical exams." R. 452.  Jacques was recommended for surgery but opted for more conservative treatments like medication management. Jacques claims to have fibromyalgia, but his ANA test had no clinical correlation. R. 412.  Sarah Moyer, a licensed psychologist, found that Jacques was only mildly impaired in his ability to understand and carry out instructions and moderately impaired in his ability to respond appropriately to supervision and co-workers. R. 409–10.  There is no indicated in the record that Jacques' pain resulted in neurological deficits, muscle atrophy, or significant weight loss. R. 405.  Moreover, the records indicate that Jacques returned to work after his alleged disability onset date and that his daily activities are inconsistent with those of an individual who is totally unable to work. R. 510, 513.  In fact, the only medical evidence suggesting a greater restriction on Jacques is a two-sentence letter from Dr. Edwards, his psychiatrist, recommending that Jacques be considered disabled based on his "baseline of paranoid thinking." R. 527.

However, the court, like the ALJ, does not find Dr. Edwards' opinion persuasive, as it conflicts with the totality of the medical evidence.

Based on this evidence, the ALJ ultimately concluded that the intensity, persistence, and functionally limiting effects of Jacques' subjective pain do not preclude him from performing sedentary work activities. R. 31. After a review of the record, the court agrees with the ALJ's conclusions and finds that the ALJ applied the proper standards and that his determination as to Jacques' residual functional capacity and, ultimately, his disability status, is supported by substantial evidence. *See Bellew*, 2014 WL 3784326 at *6 (citing *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980)) (noting that the court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence). Thus, the ALJ's findings on these issues are due to be affirmed.

## IV. CONCLUSION

Based on the foregoing, it is ORDERED that the decision of the Commissioner denying benefits is AFFIRMED. A final judgment consistent with this opinion will be entered separately.

DONE this 23rd day of September, 2016.

                                                /s/ Gray M. Borden
                                  UNITED STATES MAGISTRATE JUDGE